## LOUISVILLE & NASHVILLE RAILROAD CO. *v.* RAMSAY.

1. The allegations of the petition were sufficient to set forth a cause of action, and it was not open to general demurrer, nor was it open to any of the grounds of special demurrer urged against it.
2. In an action for damages for injury to land, a deed offered by the plaintiffs for the purpose of showing title acquired subsequently to the com-

mission of the trespass and to the commencement of the action was inadmissible in evidence, although it contained recitals as to the history of the title, such recitals themselves being inadmissible as against the defendant, who did not claim under the deed or make it.

3. Where, on the trial of an action of the character mentioned in the preceding note, the plaintiffs relied on title by gift from a particular person, testimony by another person that "We agreed to give it to the minor children,   .   .   that piece of land.  None of us older ones wanted it, as we had a piece of land and they didn't," was irrelevant.

(*a*) An express trust in land can not be shown by parol as attaching to a deed absolute on its face.

4. The evidence was sufficient to show prima facie that the plaintiffs had title to the land at the time of the alleged injury, and it was erroneous to refuse to grant a nonsuit at the conclusion of the plaintiffs' evidence.  It was also erroneous, during the further progress of the trial, to instruct the jury in such manner as would be authorized only where the evidence was of such character as to demand a finding that plaintiffs had title.

5. Other portions of the charge were not open to the criticism made upon them.

6. Except as indicated, none of the assignments of error were of such character as to require the grant of a new trial.

FEBRUARY 22, 1910.

Action for damages.    Before Judge Fite.    Murray superior court.    November 9, 1908.

Earl Ramsay and others instituted suit against the Louisville and Nashville Railroad Company.    The defendant filed a demurrer, which was overruled.    After the plaintiffs had submitted their evidence, the defendant moved for a nonsuit, which was refused.    After the case was submitted to the jury, a verdict was rendered in favor of the plaintiffs for $500.    The defendant's motion for a new trial was overruled.    Error was assigned upon each of the rulings recited.    Other facts sufficiently appear in the opinion.

*Tye, Peeples & Jordan, D. W. Blair,* and *C. N. King,* for plaintiff in error.    *Julian McCamy* and *W. W. Sampler,* contra.

ATKINSON, J. 1.    The petition in effect alleged, that the plaintiffs, as tenants in common, were the owners of a certain tract of land bordering on the waters of Rock creek and adjacent to the defendant's railroad; that before the construction of the bridge, in time of high water and freshets, the waters of the creek spread out over the adjoining lands for many feet on each side of the bank and did little or no damage to the land which it overflowed. Twelve acres of plaintiffs' land, lying just below the point at

which the railroad crossed the creek, was bottom land, very fertile, and before the injury complained of was of the value of $100 per acre, but on account of the injury was rendered worthless. The sixth paragraph of the petition is as follows: "This damage to the said tract of land has been caused by the said Louisville & Nashville Railroad Company in this way: In the construction of the bridge over said creek and of the abutting stone or concrete work on which the railroad rests, a very narrow passage is left for the passage of the waters of said creek, to wit: a width of about twenty feet, and by reason of this confinement of the waters in a space of twenty feet, instead of being allowed to spread over all the adjoining lands as it had theretofore done, the same came through the arch of defendant's bridge in great volume and at a rapid rate, whereby it washed and carried away all of the soil on said lands lying below said arch, ruining them, as aforesaid." The seventh paragraph was: "That this damage to plaintiffs' land occurred during the month of November, 1906." The defendant demurred to the petition, on the ground that it failed to set forth a cause of action, and that it did not appear that the defendant's bridge in any way encroached upon the stream underneath it, or that the defendant did anything in the construction thereof that was not perfectly legitimate and within its lawful rights. It also demurred to the sixth paragraph of the petition, on the ground that "the same is too general, in that the specific facts are not alleged and set forth. It does not appear that said bridge is not amply large to carry said stream, nor that it did not carry it on the occasion alleged. No allegation of the size of said stream appears so as to show whether said bridge is sufficiently large or not. It does not appear from plaintiffs' petition how the injury to plaintiffs' land is the result of the construction of defendant's bridge. There is no allegation showing anything defective either in the plan or the method of construction of defendant's bridge, or any allegation showing any negligence on the part of the defendant. There is no allegation as to the location of this land so that it can be identified or located by defendant." In substance the petition alleged ownership of the property to be in the plaintiffs, injury thereto, and damage resulting from the injury. It also alleged that the injury was caused on account of the character of the bridge and its abutments, which were constructed by the defendant, and which, owing

to the narrow passageway left for the water to pass under, became an obstruction to the natural flow of water in time of freshets. Also, that during the month of November, 1906, when the water was high, instead of flowing uniformly over the whole bottom, as it had previously done, without causing damage, it forced its passage under defendant's bridge in such volume and with such velocity that it accomplished the injury upon which the suit was founded. This was sufficient as against a general demurrer. While the allegations might have been more specific in certain respects, the petition was not open to any of the grounds of the special demurrer urged against it.

2. Over the objection that it was irrelevant, the judge allowed the plaintiffs to introduce a deed from Geo. L. Harlan to themselves, dated December 11, 1907, which contained the following recitals: "Whereas A. K. Ramsay, late of said county, but now deceased, in his lifetime bought from Geo. W. Hill, of Murray county, Ga., the land hereinafter conveyed for the use and benefit of the parties of the second part, his children, and whereas, before title to the said lands was made by the said Hill to the said parties of the second part, the Louisville & Nashville Railroad Co. located a line of railroad through said land; and whereas, to avoid the trouble of obtaining a conveyance from the said children (they then being minors), said Ramsay had the title to said lands made to said Geo. L. Harlan by the said Hill; and whereas said Harlan never paid anything for said land, and it was never intended that he should have any beneficial interest therein; and whereas he has heretofore conveyed to said railroad company the right of way aforesaid; now, in consideration of the premises, and the payment to him of the sum of one dollar, the receipt of which he acknowledged, the said Geo. L. Harlan has bargained and sold, and does by these presents sell and convey, to the said parties of the second part a certain parcel of land, to wit: [a tract embracing the land in dispute], to have and to hold said parcel of land to the said parties of the second part, their heirs and assigns, forever in fee simple." The suit was filed January. 11, 1907, a few days more than eleven months prior to the execution of the deed. As to this suit, the deed was inadmissible for the purpose of showing a conveyance of title to the plaintiffs. They could not rely upon title acquired after the suit was filed (*Deas* v. *Sammons, 126 Ga. 432,*

55 S. E. 170), or after the trespass was committed (*Allen* v. *Macon, Dublin & Savannah R. Co.*, 107 *Ga.* 838 (33 S. E. 696). The defendant was not a party to the deed and did not claim any right under it. Its recitals as to the history of previous transactions which led to the execution of a deed to the grantor, and the purposes for which it was executed, were not competent evidence of the facts covered by the recitals as against the defendants. *Hanks* v. *Phillips,* 39 *Ga.* 550; *Dixon Co.* v. *Monroe,* 112 *Ga.* 158 (37 S. E. 180); *Lanier* v. *Hebard,* 123 *Ga.* 626 (51 S. E. 632). The deed was inadmissible for any purpose, and the court committed error in refusing to rule it out.

3. While T. P. Ramsay was being examined as a witness in favor of the plaintiffs he was permitted to testify, over objection, "We had agreed to give it to the minor children, . . that piece of land. None of us older ones wanted it, as we had a piece of land and they didn't." The plaintiffs did not claim title under this witness, nor under any of the older children of A. K. Ramsay. Their claim of title was by gift from A. K. Ramsay during his lifetime. The testimony was clearly irrelevant. Nor was it competent in this manner to attach an express trust by parol to a deed absolute on its face.

4. The suit was for damages alleged to have accrued to the plaintiffs as owners of certain land, by reason of injury to the freehold committed by the defendant. To prevail it was incumbent upon the plaintiffs, after having been put on proof of title by the answer of the defendant, to prove at least prima facie that they had title at the time of the injury. The evidence, taken altogether, was insufficient for that purpose. Counsel for the plaintiffs in their brief contend that plaintiffs derived title by gift made by their father to them in his lifetime. The evidence is not clear as to his title; but even if he had title which he could give, there was no competent evidence of a deed of gift to the plaintiffs, or to any one for them; nor was there any evidence of a parol gift, coupled with possession and the making of substantial improvements, or possession by the donees continued for a period sufficient for acquiring title by prescription. Under such circumstances the contention of counsel that plaintiffs acquired title by gift was not tenable. *Jones* v. *Clark,* 59 *Ga.* 136; *Thaggard* v. *Crawford,* 112 *Ga.* 326 (37 S. E. 367). The plaintiffs having failed to show

title, the judge committed error in refusing to grant a nonsuit, and also, during the further progress of the trial, in charging the jury, in effect, that if the land was damaged in the manner alleged, the plaintiffs would be authorized to recover, and that they need not consider the question of title.

5. While instructing the jury the court charged: "A railroad company in the construction and maintenance of its culverts and embankments is [not?] bound to guard against every possible contingency which may result in injury to the property of others, but it is bound to so construct, keep, and maintain its culverts and embankments as to guard against the accumulation of water from freshets which in the usual course of events are likely to occur; and it is bound to so construct, keep, and maintain its culverts and embankments as that the water will not be thrown upon the lands of others in an increased volume of velocity, or in a different way than before the embankments and culverts were built, thus injuring and damaging the land more than it would otherwise have done. In guarding against such injuries it is incumbent upon the company to take into consideration the climate, the clearing upon the stream, and all of those varying conditions peculiar to the locality and which might tend to increase the flow of the stream which the culvert was designed to accommodate. I charge you further, that the defendant company would not be bound if it complied with the law which I have given you in charge, would not be bound for any damage which might accrue on account of an unprecedented and unforeseen freshet." Also: "I charge you that if any damage did accrue to the land on account of an unlooked for or unforeseen freshet, then the plaintiff could not recover, if you find, as I have stated, that the embankments and culvert were built as the law requires." These excerpts from the charge were made grounds of the motion for the new trial, the criticism being, "because of the qualification. . . If the defendant had constructed and maintained its culverts and embankments as specified by the judge in his charge, there should not be any liability on the defendant on account of any sort of rainfall, whether ordinary or extraordinary, usual or unprecedented; whereas, under the charge of the court, notwithstanding the company might have done everything that the law requires it to do in the construction and maintenance of its embankments and culverts, it would still be liable

if the jury believed that this rain was ordinary and not unprecedented. The charge should not have been qualified." Whether or not this charge may have been open to criticism upon other grounds, we are not called upon to decide; but it was not subject to the only ground of criticism set out in the assignment of error.

*Judgment reversed. All the Justices concur.*